**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| THE ESTATE OF JIMMY CARTER by and through its administrator LORESA CARTER, <br><br> Plaintiff, <br><br> v. <br><br> SSC SELMA OPERATING COMPANY LLC d/b/a WARREN MANOR HEALTH AND REHABILITATION CENTER, *et al.*, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **CIVIL ACTION NO. 2:19-CV-00431-JB-M**<br>)<br>)<br>)<br>)<br>) |

**ORDER**

This matter is before the Court on Defendants Bio-Medical Applications of Alabama, Inc., d/b/a Fresenius Medical Care of Dallas County a/k/a Fresenius Kidney Care of Dallas County and Fresenius Medical Care Holdings, Inc.'s (collectively "Fresenius Defendants") Motion to Sever and remand Plaintiff's claims against SSC Selma Operating Company d/b/a Warren Manor Health and Rehabilitation Center ("SSC"), Beverly Bierd ("Bierd"), and Ball Healthcare Services, Inc. d/b/a Lighthouse Rehabilitation & Healthcare Center ("Lighthouse") (collectively "Nursing Home Defendants"). (Doc. 11). Also before the Court are Lighthouse's Consent to Motion to Sever and Consent to Remand (Doc. 13), Plaintiff's Motion to Remand all claims (Doc. 14), and Fresenius Defendants' Response in Opposition to Plaintiff's Motion to Remand (Doc. 15). The Motions have been briefed and are ripe for review.

1

I.      BACKGROUND

Jimmy Carter, by and though his next of friend Morris Carter, commenced this action in the Dallas County Circuit Court on June 16, 2017 (the "State Action"). (Doc. 1-1 at 3). The initial complaint asserted claims under the Alabama Medical Liability Act (Ala. Code §-5-542 *et seq.* (1975)) against Living Centers - East, Inc. d/b/a Warren Manor Health and Rehabilitation Center ("Living Centers"). Mr. Carter alleged that he was a "resident" at Living Centers and that he developed bedsores and associated illnesses while under the care and supervision of Living Centers' employees. (*Id.*).

On April 2, 2018, the Estate of Jimmy Carter, by and through its administrator Morris Carter, filed a First Amended Complaint in the State Action adding a claim for wrongful death. (*Id.* at 13 - 14). The First Amended Complaint substituted Nursing Home Defendant SSC for Living Centers, and joined Nursing Home Defendant Bierd. (*Id.* at 13 - 14). Bierd is a citizen of Alabama. (*Id.* at 13).

In June 2018, Plaintiff's claims against Nursing Home Defendants SSC and Bierd were submitted to binding arbitration, and Plaintiff's State Action was transferred to the Dallas County Circuit Court's Administrative Docket. (*See* Docs. 11 at 3 and 1-1 at 124).

On July 1, 2019, the Estate of Jimmy Carter, by and through its administrator Loresa Carter (hereinafter "Plaintiff") filed a Second Amended Complaint ("SAC") in the State Action. (Doc. 1-1 at 158). The SAC joined Nursing Home Defendant Lighthouse and the Fresenius Defendants. (*Id.* at 159 - 160). Lighthouse consents to severance, and reserves "the right to compel arbitration after the case is remanded pursuant to the arbitration agreement entered into" by Plaintiff and Lighthouse. (Doc. 13 at 2). The SAC asserts Medical Liability Act and wrongful death claims

against all Defendants.  Plaintiff and Nursing Home Defendants Lighthouse and Bierd are citizens of Alabama.  (Doc. 1-1 at 159 - 160).

On August 1, 2019, the Fresenius Defendants removed this action pursuant to 28 U.S.C. § 1441(a), invoking diversity jurisdiction under 28 U.S.C. § 1332.  (Doc. 1).  Plaintiff moved to remand all claims on the ground that there is an absence of complete diversity.  (Doc. 14 at 1 – 3).  The Fresenius Defendants moved to sever and remand Plaintiff's claims against the non-diverse Nursing Home Defendants.  (Doc. 11).

II.     DISCUSSION

Under 28 U.S.C. § 1441(a), a defendant may remove a "civil action brought in a State court of which the district courts of the United States have original jurisdiction."  The Fresenius Defendants' Notice of Removal invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1).  Diversity jurisdiction "requires complete diversity between all plaintiffs and all defendants."  *Elfus v. Impact Sports Basketball LLC*, 2020 U.S. App. LEXIS 14098, at *2 (11th Cir. May 1, 2020) citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).[1]

The Court notes that removal statutes are to be "construed narrowly with doubts resolved against removal."  *Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir. 2003).  "[A]ll uncertainties as to removal jurisdiction are to be resolved in favor of remand."  *Russell Corp. v. American Home Assur. Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001).  Furthermore, it is the removing party's burden to demonstrate federal jurisdiction by a preponderance of the evidence.

---

[1] Removal is prohibited "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

*See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002); *Estate of Bruce Brockel v. Purdue Pharma, L.P.*, 2018 U.S. Dist. LEXIS 32565, at *10 (S.D. Ala. February 27, 2018) (when diversity jurisdiction is invoked as the basis of removal, "the removing party bears the burden of establishing complete diversity of citizenship - that . . . the plaintiff is diverse from all the defendants.") citing *Triggs*, 154 F.3d at 1287.

In its Motion to Remand all claims, Plaintiff notes that there is an absence of complete diversity because it and "at least" Nursing Home Defendant Bierd are citizens of Alabama.  (Doc. 14 at 1 – 3).[2]   In fact, the Notice of Removal affirmatively alleges that Nursing Home Defendant Lighthouse, as well as Bierd, are citizens of Alabama.  (Doc. 1 at paras. 10 and 11).  On the face of the pleadings, there is not complete diversity.  The Fresenius Defendants respond that the Court should disregard the citizenship of the Nursing Home Defendants, including Bierd and Lighthouse, because they were fraudulently misjoined.  (Docs. 1, 11, and 15).  The Fresenius Defendants also move that Plaintiff's claims against the Nursing Home Defendants be severed pursuant to Rule 21.  (*Id.*).

A.       **Fraudulent Misjoinder**

In *Tapscott v. MS Dealer Service Corp.*, the court stated that the "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."  77 F.3d 1353, 1359 (11th Cir. 1996) abrogated on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).   Misjoinder "may be a species of fraudulent joinder,

---

[2] Plaintiff does not challenge the amount in controversy component of diversity jurisdiction, which the Court deems to be satisfied in light of the wrongful death claim asserted in the SAC.

pursuant to which the citizenship of misjoined parties may be disregarded." *Ash v. Providence Hospital*, 2009 U.S. Dist. LEXIS 12794, at *36 (S.D. Ala. Feb. 16, 2009) (citing *Tapscott*, 77 F.3d at 1360 (11th Cir. 1996) ("misjoinder [under Rule 20] may be just as fraudulent as joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action")). "Fraudulent misjoinder occurs 'when a diverse defendant is joined with a non-diverse defendant to whom there is no joint, several, or alternative liability and where the claims against the diverse and non-diverse defendants **have no real connection to each other**.'" *Estate of Bruce Brockel*, 2018 U.S. Dist. LEXIS 32565, at *11 (emphasis in original) (quoting *In re. Accutane Prod. Liab.*, 841 F.Supp.2d 1243 (M.D. Fla. 2012) (citing *Triggs*, 154 F.3d at 1288)). Fraudulent misjoinder has been described as involving "a purposeful attempt to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal, and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard provided under Rule 20 of the Federal Rules of Civil Procedure." *Stone v. Zimmer, Inc.*, 2009 U.S. Dist. LEXIS 591125, at *6 (S.D. Fla. June 25, 2009).

The Fresenius Defendants bear the burden to demonstrate fraudulent misjoinder by clear and convincing evidence. *See Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). Their burden is a "heavy one." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). This Court must "evaluate factual allegations in the light most favorable to the [P]laintiff and resolve any uncertainties about the applicable law in the [P]laintiff's favor." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

The Court is mindful that mere misjoinder under Rule 20 does not constitute fraudulent misjoinder. *Ash*, 2009 U.S. Dist. LEXIS 12794, at *37 ("not every misjoinder amounts to fraudulent

misjoinder"). Misjoinder constitutes fraudulent misjoinder only in "egregious circumstances." *See Balgord v. Pleasure Island Land Co.*, 2014 U.S. Dist. LEXIS 180221, at *10 (S.D. Ala. Dec. 30, 2014) (citing *Tapscott*, 77 F.3d at 1360); *see also Bruner v. Am. Honda Motor Co.*, 2015 U.S. Dist. LEXIS 112255, at *12 – 13 (S.D. Ala. Aug. 25, 2015) (describing fraudulent misjoinder as "'so egregious' as to 'border on a sham.'" (citing *Tapscott, supra*)).

The distinction between misjoinder and "egregious" fraudulent misjoinder is not well-defined. However, the Court's opinion in *Triggs*, *supra*, and cases applying it, offer some guidance. First, "under *Triggs*, if a plaintiff[']s joinder satisfies the permissive joinder requirements of Rule 20(a)(2), then the parties are not fraudulently misjoined." *Bollea v. Clem*, 937 F.Supp.2d 1344, 1350-51 (M.D. Fla. 2013) (citing *Triggs*, 154 F.3d at 1289). If the court determines that there has been misjoinder, it then turns to the question of whether the misjoinder rises to the level of an "egregious" fraudulent misjoinder, allowing for the citizenship of the misjoined parties to be disregarded. That question depends "upon the extent to which the resident, non-diverse defendant has 'any real connection with the controversy' involving the diverse defendant." *Balgord,* 2014 U.S. Dist. LEXIS 180221, at *12 (quoting *Luke v. O'Hearn*, 2014 U.S. Dist. LEXIS 36395, at *6 (M.D. Ga. March 20, 2014)); *see also Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921), *Triggs*, 154 F.3d at 1288 - 90; *Estate of Bruce Brockel*, 2018 U.S. Dist. LEXIS 32565, at *11.

With this framework, the Court must first determine whether Plaintiff's joinder of the Nursing Home and Fresenius Defendants is proper under Rule 20. Rule 20(a)(2) allows joinder of defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or

occurrences," and "any question of law or fact common to all defendants will arise in the action."

Claims arise from the same "series of transactions or occurrences" if they bear a "logical

relationship." *See Smith v. Trans-Siberian Orchestra*, 728 F.Supp.2d 1315, 1319 (M.D. Fla. 2010)

(citing *Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)).  The

"logical relationship" test was explained by the court in *Estate of Bruce Brockel* as follows:

> "Under this test, a logical relationship exists if the claims rest on the same set of
> facts or the facts, on which one claim rests, activate additional legal rights
> supporting the other claim." *Id.* (citing *Republic Health*, 755 F.2d at 1455). In other
> words, "there is a logical relationship when 'the same operative facts serve as the
> basis of both claims.'" *Republic Health*, 755 F.2d at 1455 (quoting *Plant v. Blazer
> Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979)). "[O]nly claims that do not
> arise from common operative facts are not logically related." *Montgomery Ward
> Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 n.1 (11th Cir. 1991). The logical
> relationship standard is a "loose" one that "permits a broad realistic interpretation
> in the interest of avoiding a multiplicity of suits." *Plant*, 598 F.2d at 1361 (internal
> quotations omitted). Joinder rules, including Rule 20(a)(2), are construed
> generously towards "entertaining the broadest possible scope of action consistent
> with fairness of the parties." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 []
> (1966).

2018 U.S. Dist. LEXIS 32565, at *13 - 14 (quoting *Bollea*, 937 F.Supp.2d at 1350 – 51).

The threshold question, then, is whether the same set of operative facts serves as the

basis of Plaintiff's claims against the Nursing Home Defendants and its claims against the

Fresenius Defendants.  The Court concludes that the claims are not based on the same set of

operative facts.  There is no evidence of any affiliation between the Nursing Home and Fresenius

Defendants.  There is no allegation of any common corporate or other organizational interest

among the Defendants.  The Defendants operate separate facilities with separate personnel.

Although Plaintiff uses a plural possessive in its allegation that "Mr. Carter was a resident at

Defendants' facility located at 11 Bell Road, Selma, AL 36701" (Doc. 1-1 at 161), 11 Bell Road is

not "Defendant**s'**" facility.  According to Plaintiff's SAC, Nursing Home Defendant SSC owns and

operates that facility.  Plaintiff affirmatively alleges SSC "owned, operated and did business as Warren Manor Health and Rehabilitation Center" at the 11 Bell Road facility, and that SSC employed Bierd as Director of Nursing at its 11 Bell Road facility.  (*Id. at 159*).  Plaintiff affirmatively alleges a separate location as Fresenius Defendants' facility.  (*Id.* at 159 - 160).[3]

The Defendants' facilities are separate not only in terms of location and ownership, but in terms of the nature of services provided to Mr. Carter at their respective facilities.  SSC operates a residential care facility.  Plaintiff alleges that Mr. Carter was "a resident" of SSC's facility.  Plaintiff makes no such allegation concerning the Fresenius Defendants.  Mr. Carter received only outpatient dialysis treatments at the Fresenius Defendants' facility; he did not reside there.  (Doc. 11 at 2).

The parties dispute whether Plaintiff alleges Mr. Carter developed bedsores "only" at SSC's facility.  (*See* Doc. 11 at 2 and Doc. 14 at 2).  Plaintiff does allege that Mr. Carter developed bedsores while under the care and supervision of "Defendants'" employees (Doc. 1-1 at 161), though that follows Plaintiff's allegation that he was a resident of "Defendants'" facility which, as noted, refers singularly to Nursing Home Defendant SSC.  (*Id.*).  Plaintiff's allegations are awkward.  However, taking them in the light most favorable to Plaintiff, the Court interprets Plaintiff's allegations to be that Mr. Carter developed bedsores at the Fresenius Defendants' separate facility.  Where else would Mr. Carter have been under the care and supervision of Fresenius "Defendants'" employees, as Plaintiff indisputably alleges?  An allegation, though, that Mr. Carter developed bedsores at the Fresenius Defendants' facility says nothing of whether

---

[3] Nursing Home Defendant Lighthouse's facility is also alleged be at a location other than 11 Bell Road.

those bedsores bear any relation to the bedsores he is alleged to have developed while a resident of SSC's separate facility in 2016 and 2017.

Plaintiff alleges no date or specific instance of outpatient treatment at the Fresenius Defendants' facility.  Plaintiff's sole temporal allegation concerns only Nursing Home Defendant SSC.  Plaintiff alleges that Mr. Carter was a "resident" at SSC's facility "in 2016 and 2017[.]". (Doc. 1-1 at 161).  Even assuming Mr. Carter developed bedsores during outpatient treatments at the Fresenius Defendant's facility, there is nothing in the record to indicate when such treatment was rendered or when bedsores developed as a result of such treatment.

The absence of a "logical relationship" between Plaintiff's claims is apparent.  Defendants are unaffiliated.  They provided categorically different services at unrelated facilities.  The record is devoid of a temporal connection between the provision of Defendants' different services or of any connection between the injuries alleged to have been caused.  There is no indication that Plaintiff's claims against the Defendants arise out of the same transaction or occurrence, or that the "same operative facts" will serve as the basis of claims.  *Republic Health*, 755 F.2d at 1455 (quoting *Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979)).  The Court concludes Plaintiff's claims against the Nursing Home Defendants and the Fresenius Defendants have been misjoined.

As noted however, a finding of misjoinder is only a threshold matter for purposes of assessing a fraudulent misjoinder objection.  The Court must now determine whether there are "egregious" circumstances which warrant a finding that the misjoinder was fraudulent.  Only then may the citizenships of the Nursing Home Defendants be disregarded.  The test for determining whether circumstances are "egregious" is one of degree.  It turns on the "extent" to which non-

diverse defendants have "any real connection with the controversy" involving the diverse

defendants.  *See Balgord, supra*, at \*12; *see also Estate of Bruce Brockel*, *supra*, at \* 11.

Based on the facts and circumstances in the record, taken in the light most favorable to

Plaintiff, the Court is compelled to conclude that Plaintiff's misjoinder constitutes fraudulent

misjoinder.  The Court discerns no degree, whatever, of any real connection between Plaintiff's

claims against residential facility defendants for injuries sustain in 2016 and 2017 and claims

against different and unaffiliated defendants who provided different services at unknown times.[4]

Plaintiff's bald argument that the SAC "plainly demonstrates questions of law and fact

common to all defendants" is unavailing.  (Doc. 14 at 3).  Plaintiff does not explain what those

common questions so plainly are.  Plaintiff merely notes that its claims against the Defendants

are pled under the same statute.  That is not enough.  The law requires more than a common

statute; there must be some logical relationship between the claims.  There is none here.  The

Court notes the following explanation of the manner in which unrelated claims brought under

the same statute were treated in by the Eleventh Circuit in *Tapscott*, *supra*:

> *Tapscott* involved two separate classes of plaintiffs. The first class was made up of
> a group of Alabama citizens who had filed claims related to sales of automobile
> service contracts against a group of defendants all of whom were also citizens of
> Alabama (the "automobile class"). The second class involved different plaintiffs
> who, like the plaintiffs in the first class, were all Alabama citizens. The second class
> defendant, however, was a North Carolina citizen. The claims involved in the
> second class related not to sales of automobile service contracts, but rather
> involved sales of retail products (the "merchant class"). No plaintiff in the
> automobile class had a claim against the defendant in the merchant class, and no

---

[4] In its original filings against the Nursing Home Defendants, Plaintiff offered a three paragraph "Statement of Facts," including (i) Mr. Carter was a "resident" of "Defendants'" 11 Bell Road Facility, (ii) Mr. Carter developed bedsores and associated illnesses while under "Defendants'" care, and (iii) those injuries resulted from Defendants' care.  (See Doc. 1-1 at 3 (initial complaint), and 14 (first amended complaint)).  This Statement of Facts remains unchanged in Plaintiff's SAC in which Plaintiff joined the Fresenius Defendants. (Doc. 1-1 at 161).  Plaintiff offers no new allegations.

> merchant class plaintiff had any claim against any of the automobile class defendants. **Other than the statutory section under which both claims were brought, the claims of the two plaintiff classes bore absolutely no relationship to one another. The Eleventh Circuit found that there being no "real connection" between the two controversies, that the "misjoinder" was egregious so as to constitute "fraudulent misjoinder."** *Tapscott v. M.S. Dealer Svcs. Corp.*, **77 F. 3d 1353 (11th Cir. 1996).**

*In re. Trasylol Prods. Liab. Litig. - MDL - 1228*, 754 F. Supp. 2d 1331, 1335 (S.D. Fla. 2010) (emphasis added).   The record before this Court simply does not allow a finding of any relationship between Plaintiff's claims.  Other than the statute under which they are brought and the type of injury alleged, Plaintiff's claims against the respective Defendants bear no degree of relationship to one another.

The Court does note one material change that occurred between Plaintiff's filing of the First Amended Complaint, against the non-diverse Nursing Home Defendants, and its filing of the SAC, which joined the diverse Fresenius Defendants:  Arbitration.  As noted, in June 2018, Plaintiff's claims against Nursing Home Defendants SSC and Bierd were submitted to binding arbitration and placed on the Dallas County Circuit Court's administrative docket.  (See Doc. 11 at 3, and Doc. 1-1 at 124).  Nursing Home Defendant Lighthouse does not oppose the Fresenius Defendants' motion for severance, and reserves the right to enforce its arbitration agreement with Plaintiff.  The Court is persuaded by the Fresenius Defendants' argument that Plaintiff's claims against the Nursing Home Defendants are not properly in any court.  (Doc. 15 at 5). Plaintiff's claims against them are going to be resolved in arbitration, in the absence of the Fresenius Defendants.  The diverse Fresenius Defendants should not be deprived of a federal forum due solely to Plaintiff's claims against non-diverse defendants which will not be litigated in a state court, or in any court.

11

Based on the foregoing, the Court concludes that the circumstances of Plaintiff's misjoinder of the Nursing Home and Fresenius Defendants are egregious, such that the citizenship of the Nursing Home Defendants shall be disregarded for purposes of establishing diversity jurisdiction.

### B.      Severance Under Rule 21

The Fresenius Defendants also move the Court to sever Plaintiff's claims against the Nursing Home Defendants under Rule 21.  (Docs. 1, 11, and 15).  The Plaintiff has not responded to this request for severance.

Rule 21 provides:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

The discretion afforded to courts under Rule 21 is broad.  *See Nettles v. Daphne Utils.*, 2014 U.S. Dist. LEXIS 58302, at *3 - 5 (S.D. Ala. April 28, 2014) ("The trial court has broad discretion in determining whether to sever claims under Fed.R.Civ.P. Rule 21." (quoting *Oram v. SoulCycle LLC*, 979 F.Supp.2d 498 (S.D.N.Y. 2013)).  In *Tillis v. Cameron*, the court described the discretion as "so broad that courts have virtually unfettered discretion in determining whether or not severance is appropriate."  2007 U.S. Dist. LEXIS 2806770, at *5 (M.D. Ala. Sept. 25, 2007).

Although the first sentence of Rule 21 states that "[m]isjoinder of parties" is not grounds for dismissal, claims may be severed and parties dismissed even in cases where parties have not been misjoined.  *See Mays v. Gen. Motors LLC*, 2017 U.S. Dist. LEXIS 59545, at *14 (N.D. Ala. 2017) ("Despite  the  reference  in  the  first sentence of this rule to 'misjoinder,' '[t]he application of Rule 21 has not been limited to cases in which parties were erroneously omitted from the

12

action or technically misjoined contrary to one of the party joinder provisions in the federal

rules.'" 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1682 (3d

ed. 2016)); s*ee also Essex Ins. Co. v. Kart Const., Inc.*, 2015 U.S. Dist. LEXIS 17493, at *10 (M.D.

Fla. Feb. 12, 2015) ("Although this severance provision appears in a rule related to the misjoinder

of parties, it is not so limited.").

Rule 21 has consistently been interpreted to allow for the dismissal of dispensable,

nondiverse parties to cure a lack of diversity.  *See Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 863

(11th Cir. 1985) ("In *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 [], the Supreme Court

held that federal courts of appeals have the authority - like that given to the district courts in

Fed.R.Civ.P. 21 - to dismiss dispensable, nondiverse parties to cure defects in diversity

jurisdiction."); *see also Great W. Cas. Co. v. FirstFleet, Inc.*, 2013 U.S. Dist. LEXIS 115690, at *n 12

(S.D. Ala. July 17, 2013), Report and Recommendation as modified by 2013 U.S. Dist. LEXIS 115724

(S.D. Ala. Aug. 15, 2013) (Rule 21 may be "used in the absence of misjoinder and non-joinder to

dismiss nondiverse, dispensable parties to cure a lack of diversity subject matter jurisdiction and

preserve as much of a case as is properly before the court.").  The Eleventh Circuit Court of

Appeals has explained, however, that a party may be dismissed to cure a jurisdictional defect

only if the party is determined to be dispensable:

> When the district court intends to dismiss a nondiverse party to remedy a
> jurisdictional defect, it must also determine whether that party is dispensable. *See
> id.; Horn v. Lockhart*, 84 U.S. 570, 579 [] (1873).  If the nondiverse party is
> dispensable, the court may dismiss that party and the claims against it, and retain
> jurisdiction over any remaining diverse parties.  *Horn*, 84 U.S. at 579; *see also
> Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 [] (1989) (noting that
> "Rule 21 invests district courts with authority to allow a dispensable nondiverse
> party to be dropped at any time").

*Landmark Equity Fund II, LLC v. Residential Fund 76, LLC*, 631 Fed. Appx. 882, 884 - 885 (11th Cir.

2017).  The Court in *Landmark* described the test under Rule 19 to determine whether a party is

dispensable as follows:

> The first step, set forth in Rule 19(a), asks whether the person is a "required party."
> Fed.R.Civ.P. 19(a)(1).  The relevant inquiry is "whether complete relief can be
> afforded in the present procedural posture, or whether the nonparty's absence
> will impede either the nonparty's protection of an interest at stake or subject
> parties to a risk of inconsistent obligations."   [*City of*] *Marietta [v. CSX
> Transportation, Inc.],* 196 F.3d [1300,] 1305 [(11th Cir. 1999)].  We proceed to the
> second step only if we determine that the person at issue is a required party. Id.
> The second step, set forth in Rule 19(b), asks "whether, in equity and good
> conscience, the action should proceed among the existing parties or should be
> dismissed." Fed.R.Civ.P. 19(b)...."

631 Fed. Appx. at 885.

As noted, Plaintiff has not responded to the request for severance under Rule 21.  The

Court will not formulate arguments for Plaintiff.   *See, e.g., Fisher v. Ciba Specialty Chems. Corp.*,

238 F.R.D. 273, 2006 U.S. Dist. LEXIS 48395, at *32 n.57 (S.D. Ala. July 14, 2006) ("the onus is upon

the parties to formulate arguments") (quoting *Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380,

1388 (11th Cir. 1997)).  Apart from Plaintiff's failure to respond, the Court finds that the Fresenius

Defendants have made a sufficient showing to support their Motion to Sever.[5]  The Nursing Home

Defendants are not required parties.  Indeed, in the light of the present procedural posture of

this action, and regardless of whether the Nursing Home Defendant are dismissed from it,

Plaintiff's claims against them will be arbitrated in the absence of the Fresenius Defendants.

---

[5] Plaintiff's failure to respond does not excuse the Fresenius Defendants from their burden to support their motion
for a severance under Rule 21.  *See Branch Banking and Trust Co. v. Howard*, 2013 U.S. Dist. LEXIS 6805, at * 4 – 5
(S.D. Ala. Jan. 16, 2013).

Further, neither Plaintiff nor the Nursing Home Defendants have an interest that will be put at risk if this action proceeds solely against the Fresenius Defendants.  The absence of the Nursing Home Defendants in this action will not subject them or the Fresenius Defendants to inconsistent obligations.  Any obligation on the part of the Nursing Home Defendants to remedy injuries they caused to Plaintiff will have no effect on any obligation the unaffiliated Fresenius Defendants may have for injuries they caused to Plaintiff by rendering different services at different locations.  There is no indication that the absence of the Nursing Home Defendants will impair this Court's ability to afford complete relief.

Based on the record before it, the Court cannot envision prejudice to any party resulting from the dismissal of the Nursing Home Defendants.  Plaintiff's ability to recover against the Nursing Home Defendants in arbitration, and their ability to assert defenses, will not be impaired.  Likewise, Plaintiff's ability to recover against the Fresenius Defendants in this action will not be prejudiced by the absence of the Nursing Home Defendants.   There are no equitable considerations that work against the dismissal of the Nursing Home Defendants.  Similarly, the interests of judicial economy will be served by severing Plaintiff's arbitrable claims against the Nursing Home Defendants from its non-arbitral claims against the Fresenius Defendants.  *See Smith v. Dolgencorp, LLC*, 2017 U.S. Dist. LEXIS 29304, at *9 - 10 (N.D. Ala. March 2, 2017) (finding that severance based upon judicial economy was "warranted because of the widely diverging procedural tracks that [one plaintiff's] claims will follow in arbitration versus those of [another plaintiff] that will proceed in litigation before this court." (citing *Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("If some claims are non-arbitrable, while others are

arbitrable, then we will sever those claims subject to arbitration from those adjudicable only in court.")).

Based on the foregoing, the Court exercises it discretion under Rule 21 to sever Plaintiff's claims against Nursing Home Defendants and to dismiss them from this action.

**CONCLUSION**

For the reasons stated herein, the Fresenius Defendants' Motion to Sever and Remand (Doc. 11) is GRANTED.  Plaintiff's Motion to Remand all claims (Doc. 14) is DENIED.  Plaintiff's claims against SSC Selma Operating Company d/b/a Warren Manor Health and Rehabilitation Center, Beverly Bierd, and Ball Healthcare Services, Inc. d/b/a Lighthouse Rehabilitation & Healthcare Center are SEVERED and REMANDED to the Dallas County Circuit Court. The Court determines that it has and shall exercise diversity jurisdiction over Plaintiff's remaining claims against the Fresenius Defendants.

**DONE and ORDERED** this 23rd day of June, 2020.

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE